```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------x
UNITED STATES OF AMERICA                     :
                                             :
v.                                           :    ORDER
                                             :
WENDELL JONES and                            :    19 CR 700 (VB)
JASON BOGAN,                                 :
                   Defendants.               :
--------------------------------------------------------x
```

By letter dated November 13, 2020, defendant Jason Bogan moved for the production of discovery pursuant to Rules 5(f) and 16 of the Federal Rules of Criminal Procedure, as well as Brady v. Maryland, 373 U.S. 83 (1963), and Giglio v. United States, 405 U.S. 150 (1972). (Docs. ##171, 172). Defendant Wendell Jones joined the motion. (Doc. #173). The government responded by letter dated December 7, 2020 (Doc. #198), and Bogan's counsel filed a reply on December 11, 2020. (Doc. #208). Although Bogan's letters ask that the Court order the government to produce several dozen categories or sub-categories of information, many of which are duplicative, the motion boils down to a demand that the government:

(i) produce documentation and any recordings relating to a transaction on August 29, 2019, when Bogan sold "fake narcotics" to a confidential informant ("CI"),

(ii) interview the CI regarding alleged misconduct by the CI in his dealings with Bogan, and report the results thereof to Bogan's counsel;

(iii) produce forensic copies of the two cell phones used by the CI (the "6293 phone" and the "9845 phone") to the extent they contain Bogan's statements in the form of text messages to the CI; and

(iv) disclose the CI's identity.

For the following reasons, the motion is GRANTED IN PART and DENIED IN PART.

First, having reviewed defense counsel's letters and the government's response, the Court is persuaded the government has complied with its obligation to investigate whether Brady or Giglio material exists and to produce such material to the defense.[1] As set forth in the

---

[1] Counsel's frequent references to Fed. R. Crim. P. 5(f) and the Court's order of November 5, 2020 (Doc. #169), are beside the point. Rule 5(f), which was enacted on October 21, 2020, and is entitled "reminder of prosecutorial obligation," requires the Court to issue an order "that confirms the disclosure obligation of the prosecutor under Brady . . . and the possible consequences of violating such order under applicable law." The Court's November 5 order did just that. Rule 5(f) does not create any new disclosure obligations that do not already exist. And the Court's November 5 order did not order the government to do anything it was not already obligated to do. Indeed, contrary to defense counsel's December 11 letter, the November 5 order

government's December 7 letter, the government has appropriately investigated the issues raised by defense counsel. Indeed, the government states that it questioned its agents with respect to no less than eleven of defense counsel's concerns, and the letter provides detailed responses to those concerns.

Moreover, the government represents it has now produced all documents in its possession relating to the August 29 transaction as well as an audio recording of the transaction, has offered to make the fake drugs available for counsel's inspection, and has provided the names of the agents present for the August 29 transaction. To the extent Bogan contends the fact that he sold fake drugs to the CI on August 29 (and that the agents failed to memorialize that the substance sold was not narcotics), constitutes Brady material, those facts and the evidence relating thereto are now known to Bogan, and the defense can make whatever use of that information at trial they think is appropriate. Nothing more is required of the government to comply with its Brady obligation.

Regarding allegations of the CI's misconduct, the government represents that the agents searched the CI before and after an alleged drug transaction between Bogan and the CI on August 6, 2019, and did not find contraband or money on the CI's person or in his car, before or after the transaction; in other words, the government has concluded the CI did not steal buy money on that date. To the extent the defense believes an audio recording of the August 6 transaction shows otherwise, the defense may make appropriate use of that information at trial. The government also represents that its agents monitored the CI's use of the 9845 phone; no unsupervised meetings occurred between the CI and Bogan on August 29 or August 30; the agents told the CI to stop communicating and meeting with Bogan after August 30 because of the fake narcotics Bogan sold him on August 29; and the CI never met with or purchased narcotics from a target without the agents' approval or supervision. The government's response is sufficient, and the Court will not order the government to conduct a further interview of the CI on these subjects.

Regarding Bogan's demand that the government produce forensic copies of the CI's two cell phones because they may contain text messages from Bogan to the CI that are discoverable under Rule 16(a)(1)(B) as statements of the defendant, the government represents it has already produced these statements as part of Bogan's cell phone extraction. On this point, the Court agrees with Bogan that the government has an affirmative obligation to determine whether the CI's cellphones contain text messages from Bogan that were not otherwise produced as part of Bogan's cell phone extraction. Accordingly, by no later than January 11, 2021, the government is directed to compare the text messages saved on the CI's cell phones to those on Bogan's phones, and to ensure that Bogan receives a complete set of his text messages. However, because the government has complied with its Brady obligation regarding alleged unsupervised meetings between Bogan and the CI on August 29 and August 30, the government is not otherwise required to provide forensic copies of the CI's phones to the defense.

---

did not direct the government to "interview the CI, and subject him to probing questions." (Doc. #208 at 2).

Finally, the government contends it is not required to disclose the CI's identity to Bogan.[2] The Court is not persuaded. Although the Court does not accept the defense argument that the CI is the "sole, critical witness to his interactions" with Bogan (Doc. #208 at 2)—since the defense has copies of recordings of these interactions and the agents supervised the interactions—the CI certainly is an important witness whose testimony would be significant. Thus, the CI's identity is relevant and helpful to the defense, and must be disclosed. See Roviaro v. United States, 353 U.S. 53, 60-61 (1957). Moreover, the government has not articulated any particular safety concerns that would arise if the CI's identity were disclosed. Accordingly, by no later than January 11, 2021, the government is directed to disclose the CI's identity to Bogan's counsel. The Court is confident the parties can agree on an appropriate protective order regarding same.

The Clerk is instructed to terminate the letter-motions. (Docs. ##171, 172, 173).

Dated: December 28, 2020
White Plains, NY

SO ORDERED:

_____
Vincent L. Briccetti
United States District Judge

---

[2] Given the number and nature of the contacts between the CI and Bogan, the Court is surprised the CI's identity is not already known to Bogan. But apparently it is not.